**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Lori Yokoyama, | |
|        Plaintiff, | Case No. 24-cv12276 |
| v. | |
| Jennifer Peyton and the Executive Office of Immigration Review, | |
|        Defendants. | |

**EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER and
PRELIMINARY INJUNCTION**

The Plaintiff, Lori Yokoyama, pursuant to Rule 65 of the Federal Rules of Civil Procedure, moves this honorable Court for the entry of a Temporary Restraining Order and Preliminary Injunction enjoining the defendants, Jennifer Peyton (Peyton) and the Executive Office of Immigration Review (EOIR), and all persons acting on their orders or on their behalf from confiscating, destroying, damaging, disposing of, altering or erasing any of the data therein/on the laptop or the laptop itself that was assigned to the Plaintiff while appointed to the Chicago Immigration Court or in the alternative to allow Plaintiff to retain possession of the laptop and for the immediate return of the Plaintiff's government issued identification card (PIV); and to allow Plaintiff to access, retrieve and recover all of her documents, including but not limited to her emails and any documents regarding her "performance and conduct" or that support and demonstrate that she fulfilled the performance and conduct requirements required of her as an immigration judge, pending entry by the Court of a final judgment in this action.

In support thereof, the Plaintiff states as follows:

1. EOIR's primary mission is to adjudicate immigration cases by fairly, expeditiously and uniformly interpreting and administering the Nation's immigration laws.

2. The Plaintiff was an immigration judge with EOIR, appointed to the Chicago Immigration Court on November 20, 2022 and running through November 19, 2024.

3. The Defendant, Jennifer Peyton (Peyton) is an Assistant Chief Immigration Judge at the Chicago Immigration Court and was Plaintiff's supervisor.

4. On or about August 16, 2024, Peyton reassigned Plaintiff to the Recognition and Accreditation (R&A) department of EOIR. Plaintiff fully performed her R&A duties and responsibilities remotely.

1

5. Peyton ordered Plaintiff to appear for an in-person meeting on November 12, 2024. Plaintiff was not told nor was she aware of the purpose of the meeting.

6. At the meeting, Peyton hand delivered Plaintiff a "Notice of Non-Conversion." The notice stated that her appointment, which is not to exceed November 20, 2024, would not be converted. **Ex. A**

7. The decision was allegedly based on a review of Plaintiff's "performance and conduct." Despite multiple requests during the meeting, Peyton provided no information, written or oral, explaining how Plaintiff's performance and conduct was the basis for the decision.

8. Acting Regional Deputy Chief, Immigration Judge Khalilah Taylor (Taylor) was present, via webex, at the meeting. This was the first time Plaintiff ever met Taylor.

9. Although Plaintiff remained an employee of EOIR up and through November 20, 2024, Peyton ordered the immediate confiscation of her government equipment/property, i.e., laptop, PIV card (government access card), parking access card, building access card, documents, etc. on November 12, 2024. Plaintiff advised Peyton that she was not told to bring her laptop with her and thus did not have it with her. Peyton had Plaintiff accompanied out of the building with her personal belongings.

10. Plaintiff was informed that in the last 18 years, no other employee in the Chicago immigration Court had been escorted out of the building.

11. Pursuant to 5 C.F.R. §315.804, "..when an agency decides to terminate an employee serving a probationary or trial period because her work performance or conduct during this period fails to demonstrate her fitness or qualifications for continued employment, it shall terminate her services by notifying her *in writing* as to why she is being separated and the effective date of the action. The *information in the notice* as to why the employee is being terminated *shall, **as a minimum**, consist of the agency's conclusions as to the inadequacies of his(her) performance or conduct*. (emphasis added)

12. Peyton's notice failed to provide any details, explanation or the agency's conclusions as to the "inadequacies of her performance or conduct and was therefore, defective on its face and in violation of the law. When Plaintiff asked during the meeting for the specific inadequacies of her performance or conduct, she was repeatedly denied any information or explanation by Peyton. Her only response was, "the decision was final" and there was nothing that could be done to reverse it. Neither the notice nor Peyton mentioned anything about complaints during the meeting.

13. Some of Plaintiff's fellow immigration judges who boarded at or about the same time had appeals sustained, i.e., the Board of Immigration Appeals, ("BIA"), ruled that the Immigration Judge's decision was wrong and reversed the decision or their decisions were remanded back to the immigration judge since there was a question or issue regarding their decision. None of Plaintiff's decisions were reversed or remanded. None of the appeals filed in her cases were sustained. Of the six (6) appellate decisions

rendered in Plaintiff's cases, 5 were dismissed (one of which the BIA affirmed, without opinion) and the sixth was summarily dismissed because of the Respondent's failure to file a brief.

14. Plaintiff's judicial temperament, demeanor and professionalism has never been criticized. She was advised that she is cordial and courteous.

15. As an ACIJ, Peyton knew or should have known of the law governing the notice but knowingly violated it by her failure to provide the mandated minimum amount of written information to Plaintiff.

16. Further, Plaintiff's termination is subject to 5 U.S.C. §4303 which states in pertinent part:

> **"(b)**
> **(1)**An employee whose reduction in grade or removal is proposed under this section is entitled to—
>> **(A)** 30 days' advance written notice of the proposed action which identifies—
>> **(i)** specific instances of unacceptable performance by the employee on which the proposed action is based; and
>> **(ii)** the critical elements of the employee's position involved in each instance of unacceptable performance;
>> **(B)** be represented by an attorney or other representative;
>> **(C)** a reasonable time to answer orally and in writing; and
>> **(D)** a written decision which—
>>> **(i)** in the case of a reduction in grade or removal under this section, specifies the instances of unacceptable performance by the employee on which the reduction in grade or removal is based, and
>>> **(ii)** unless proposed by the head of the agency, has been concurred in by an employee who is in a higher position than the employee who proposed the action."

17. Plaintiff was never afforded the protection set forth in ¶s 11 or 16.

18. EOIR prohibits employment harassment or discrimination based on race, color, religion, natinal origin, age, disability, sex, genetic information, parental status, marital status, political affiliation and veteran's preference.

19. Prior to joining the bench Peyton was in private practice representing individuals seeking relief from removal. Her practice included the Chicago Court. Ever since her appointment Peyton has a documented record of increasing her ***"grant"*** rate of asylum applications (**84.3%**) to be substantially higher than the national average. According to the most recent published data, her ***denial*** rate is 14.5% compared to the national average of 57.7%.

20. Peyton knew and had access to information that her grant rate of asylum applications was vastly different than the Plaintiff and targeted her as a result.

21. In August 2023, Peyton met with Plaintiff and advised her that she had conferred with the attorneys from one of the Plaintiff's hearings where she had denied an application for asylum. According to Peyton *they* all agreed that Plaintiff's decision was incorrect and would be overturned by the Board of Immigration Review (BIA).

22. According to the Executive Office of Immigration Review job description, "Immigration Judges make decisions that are final, *subject* to appeal to the BIA. In connection with these proceedings, Immigration Judges exercise certain discretionary powers as provided by law, and ***are required to exercise "independent judgment"*** in reaching final decisions…" **See** Job description for immigration judges from the formal usajobs.gov website

23. The BIA affirmed Plaintiff's decision in the case Peyton was convinced would be reversed.

24. Peyton encouraged private practitioners to file complaints against Chicago Immigration Judges, including Plaintiff with the Judicial Conduct and Professionalism Unit (JCPU).

25. The purpose of a complaint, however, is ***not*** a means to:

    1. Appeal an unfavorable decision;
    2. Challenge general misconduct unrelated to an IJ's role as an adjudicator in immigration court;
    3. Request that an IJ withdraw from hearing a case;
    4. Express disapproval of or disagreement with the outcome of an IJ's decision, unless that outcome reflects alleged judicial misconduct; or,
    5. Criticize or express political disagreement with established law or policy or an IJ's adherence to such law or policy.

26. EOIR is supposed to closely scrutinize formal written complaints that attempt to harass, threaten, intimidate, or retaliate against its adjudicators.  According to EOIR, "coercing or attempting to coerce an adjudicator through a retaliatory complaint or willfully threatening an adjudicator may subject a practitioner to disciplinary sanction.  Similarly, coercing or attempting to coerce an adjudicator through a government referral may subject the referrer to corrective action."

27. According to Peyton, an appeal from an unfavorable decision is only available to an IJ when "disciplinary action", e.g. removal from federal service occurs. Plaintiff has not been given an opportunity to appeal her removal from federal service.

28. Shortly after the BIA decision affirmed Plaintiff's decision that Peyton was convinced would be overturned, Peyton's instruction to counsel to file Complaints against immigration judges and, Plaintiff's unacceptable grant rate of asylum applications

became known to Peyton, complaints in cases where the BIA affirmed the Plaintiff's decision and dismissed the appeal were filed against the Plaintiff. In addition, when a complaint riddled with false statements was filed against Plaintiff, rather than dismiss it, Peyton rewrote it and told Plaintiff, "the attorney made a few misstatements." Peyton sustained complaints in cases that were affirmed by the BIA. Plaintiff was told she had no recourse and could not appeal Peyton's decisions.

29. Plaintiff prepared detailed written responses to each of the complaints. In order to prepare her responses, she conducted extensive research, investigation and authored several drafts. These materials are preserved on Plaintiff's laptop.

30. All emails, correspondence and communication between Plaintiff and the Defendants and members of Counsel for Ethics at EOIR as well as others regarding her performance and conduct are on her laptop.

31. Based on the above, Plaintiff has a substantial likelihood of succeeding on her appeal of Defendant's non-conversion decision.

32. If Plaintiff returns her laptop to Defendants, it could easily be wiped, lost, damaged or destroyed and all of Plaintiff's information and data will be lost. As a result, Plaintiff is at risk of imminent and irreparable harm if the injunction if not granted.

33. Plaintiff has experienced unbearable emotional and physical stress, embarrassment, humiliation, pressure, loss of her position as an immigration judge and attacks on her integrity, ethics and moral character as a result of the statements, conduct, acts and omissions of Peyton and EOIR.

34. That no prejudice or harm will be experienced by Peyton or EOIR if Plaintiff is allowed to recover her PIV card and all of her data, emails, memoranda or any other material from her laptop before returning it to the Defendants. The harm suffered by Plaintiff if the data or laptop is destroyed, lost or in any altered outweighs the harm to the Defendants if the injunction is issued.

Wherefore, Plaintiff requests that this Court order the return of her PIV card and to allow her to obtain and/or copy the hard drive and all of her emails, data, draft and final responses, memoranda, research, emails to and from Peyton, EOIR, EOIR Ethics Counsel and any others, all data regarding or related to her non-conversion, performance, conduct and the alleged complaints and any other documents, including but not limited to all of her memos, written responses to the alleged complaints, research, investigation, the reports of Plaintiff's and her colleagues cases that were appealed and the results of the appeal, cognos reports, etc. In addition, the Plaintiff requests that this Court allow her to preserve and retain possession of her laptop to prevent the destruction, deletion or removal of any of the data, information etc. on her laptop. Lastly, no bond is required in this case.

/s/ Lori S. Yokoyama_____
Attorney for Plaintiff

Lori S. C. Yokoyama & Associates, P. C.
4800 S. Greenwood
Chicago, Illinois 60615
312/380-6580